# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| MARIE PAUL, | CASE NO. 13cv3128-LAB (JMA) |
|---|---|
| Plaintiff, | **ORDER GRANTING MOTION TO DISMISS** |
| vs. | |
| CAROLYN COLVIN, Director of the Social Security Administration, et al., | |
| Defendants. | |

Plaintiff Marie Paul, proceeding *pro se* and *in forma pauperis*, filed a complaint challenging a decision or action by the Social Security Administration (SSA) concerning her social security number. The Court conducted the mandatory screening, *see* 28 U.S.C. § 1915(e)(2)(B); *Lopez v. Smith,* 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc), and dismissed the complaint with leave to amend, giving a detailed explanation of its reasons for doing so. (Docket no. 3.) Paul then filed an amended complaint. The Court screened that as well, and dismissed it with leave to amend, again providing detailed reasons. (Docket no. 7.) Paul filed a Second Amended Complaint (the "SAC"), which the Court again screened. This time, only some of Paul's claims were dismissed. The remainder, though shaky, survived screening. The Court deemed the SAC amended to reflect the dismissals, and ordered the U.S. Marshals to serve it.

///

After an extension of time to reply, Defendants filed a motion to dismiss (the "Motion"), both for lack of jurisdiction and failure to state a claim. *See* Fed. R. Civ. P. 12(b)(1), (6). That motion is now fully briefed and ready for decision.

**Legal Standards**

The Court is presumed to lack subject matter jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). The party invoking the Court's jurisdiction bears the burden of establishing that it exists. *Id.*; *KVOS, Inc. v. Associated Press*, 299 U.S. 269, 278 (1936).

The standards the Court must apply when ruling on a Fed. R. Civ. P. 12(b)(1) motion vary according to the nature of the jurisdictional challenge. Here, the jurisdictional challenge is a facial attack; Defendants contend that the allegations of jurisdiction contained in the complaint are insufficient on their face to demonstrate the existence of jurisdiction. *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). When jurisdiction is facially attacked, a plaintiff is entitled to safeguards similar to those applicable when a Rule 12(b)(6) motion is made. *See Sea Vessel Inc. v. Reyes*, 23 F.3d 345, 347 (11th Cir. 1994); *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990). The factual allegations of the complaint are presumed to be true, and the motion is granted only if the plaintiff fails to allege an element necessary for subject matter jurisdiction. *Savage v. Glendale Union High Sch. Dist. No. 205*, 343 F.3d 1036, 1039 n. 1 (9th Cir. 2003); *Miranda v. Reno*, 238 F.3d 1156, 1157 n.1 (9th Cir. 2001).

A Fed. R. Civ. P. 12(b)(6) motion tests the sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). The allegations must state a claim to relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The Court rejects Paul's suggestion that it should apply the old pleading standard set forth in *Conley v. Gibson*, 355 U.S. 41, 47–48 (1957). *See Bell Atlantic*, 550 U.S. at 561–62 (disapproving the *Conley* standard).

When determining whether a complaint states a claim, the Court accepts all allegations of material fact in the complaint as true and construes them in the light most favorable to the non-moving party. *Cedars–Sinai Med. Ctr. v. Nat'l League of Postmasters of U.S.*, 497 F.3d 972, 975 (9th Cir. 2007) (citation omitted). But the Court is "not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint," and does "not . . . necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003) (citations and quotation marks omitted).

Because Paul is proceeding *pro se*, the Court construes her pleadings liberally and affords her the benefit of any doubt. *See Erickson v. Pardus,* 551 U.S. 89, 94 (2007); *Karim–Panahi v. L.A. Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988). That said, the Court's construction may not "supply essential elements of claims that were not initially pled." *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

Because Rule 12(b)(6) review is confined to the complaint, the Court generally does not consider material outside the pleadings. *In re American Continental Corp./Lincoln Sav. & Loan Securities Litig.*, 102 F.3d 1524, 1537 (9th Cir. 1996). But the Court may properly consider exhibits attached to the complaint and documents whose contents are alleged in the complaint but not attached, if their authenticity is not questioned. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). The Court may also consider matters subject to judicial notice. *See Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1016 n.9 (9th Cir. 2012).

Ordinarily if a complaint is dismissed, a plaintiff will be given leave to amend. But leave may properly be denied where a plaintiff's proposed amendments would fail to cure pleading defects and amendment would be futile. *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011). In determining whether leave should be granted, the Court may properly consider the fact that Paul has had multiple opportunities to amend *See, e.g., Karboau v. Clark*, 577 Fed. Appx. 678, 679 (9th Cir. 2014) (holding that district court properly dismissed plaintiff's claims, noting multiple opportunities to amend had been

given); *Pfau v. Mortenson*, 542 Fed. Appx. 557, 558 (9th Cir. 2013). *See also Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992) (noting that the district court's discretion to deny leave to amend is particularly broad where it has afforded plaintiff one or more opportunities to amend).

The fact that a complaint has survived screening does not necessarily mean it has merit or lacks defects, or that it cannot be dismissed later on a motion. *See Teahan v. Wilhelm,* 481 F. Supp. 2d 1115, 1119 (S.D. Cal. 2007) ("[T]he sua sponte screening and dismissal procedure is cumulative of, not a substitute for, any subsequent Rule 12(b)(6) motion that the defendant may choose to bring.") Adversarial motion practice may uncover defects that were previously not apparent. That is particularly true in a case like this, where the type of claim is unusual, and where defense counsel have both special expertise and also access to documents, records, and information that can help shed light on the case.

**Discussion**

The Court is required to address jurisdiction first, before proceeding to the merits. *Baker v. Microsoft*, 785 F.3d 315, 319 (9th Cir. 2015). Defendants' briefing put Paul on notice that jurisdiction had to be addressed, and that she bore the burden of proving it. (Mot. at 5:16–23.) The Court also raised the issue of sovereign immunity, cautioning Paul that federal agencies are immune from suit absent a waiver of their immunity. (*See* Docket no. 3 (First Screening Order), 2:23–26 (citing *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994).)

**Paul's Claims**

Paul has alleged that she was assigned a particular social security number (the "Number") in 1978. (SAC, ¶ 7.) Her stepfather, she alleges, traveled with her from Puerto Rico to New York, where he filled out a form in the Social Security office claiming her as his stepdaughter. (*Id.*) After they returned to Puerto Rico, Paul alleges she received a social security card in the mail, and has been using the Number ever since. (*Id.*, ¶ 8.) In November of 2011, she received a notice from the SSA telling her not to use the Number and that it was assigned to someone else. (*Id.*, ¶¶ 8, 9.) Her requests to have the SSA either reinstate

/ / /

her right to use the Number, or else to assign her a new number, were unsuccessful. (*Id.*, ¶ 10.)

Paul has attached several documents to the SAC, and they tell a somewhat different story. That is not to say the SAC's factual allegations are deliberately wrong, but the exhibits show Paul has misconstrued some of what she read or was told. (SAC, Ex. 2; *see also id.*, Ex. 3 (Robert Blasi's letter to the SSA).)

The SSA's letter dated November 14, 2011 was sent to her tax and immigration attorney, Robert Blasi, informing him that Paul had, in the past, been told to stop using the Number. (*Id.*, Ex. 2.)  The same letter informs him that the SSA had tried to verify Paul's age and citizenship, but was unable to do so, and that there was no record of her birth in the places she had said it might be found (*i.e.*, Indianapolis, Indiana, or San Juan, Puerto Rico). (*Id.*, Exs. 2, 3.) The letter says there are earnings posted for Paul in a suspense file dating back to 1999. It offers to assign her a social security number, and then credit those earnings to her account once she provides the SSA with proof of age and citizenship. (*Id.*, Ex. 2.) With regard to a claim for refund of social security withholdings by Paul's employers, the letter directs Blasi to contact the IRS.

Particularly telling is a letter from Blasi dated February 20, 2013, concerning a FOIA request. (SAC, Ex. 5 (Docket no. 10 at 25–26).) That letter says Blasi was "currently in the process of filing with [USCIS] a Petition for Naturalization (Form - N400) for Paul."[1] It goes on to say that a birth certificate for her son, who was born in Puerto Rico, shows that she was born in the British Virgin Islands, although no record of her birth there was found. The rest of the letter recounts Paul's early family history, saying she was abandoned at age five while in Puerto Rico, and thereafter became a "resident of the United States." This letter, in short, represents that Paul was born outside of the U.S. and, as of February 20, 2013, was

/ / /

---

[1] Form N-400 is an application for naturalization for use by people not yet entitled to U.S. citizenship. *See Robertson-Dewar v. Holder*, 646 F.3d 226, 227 (5th Cir. 2011). By contrast, Form N-600 can be used by those who are already entitled to U.S. citizenship, *e.g.*, because they were born in the U.S. or because their parents were U.S. citizens. *See id.*

not (or did not believe she was) a U.S. citizen. It also represents that, at least as of that date, Paul had not been able to locate her birth certificate.

This letter is followed by a series of correspondence between Blasi and the SSA, supported by several forms signed by Paul. The last letter, dated July 10, 2013, summarizes Blasi's requests. (SAC, Ex. 8.) He first asks the SSA to explain by what procedure social security numbers are assigned to newborn children or naturalized U.S. citizens, and he then asks by what authority or for what reason Paul was denied use of the Number. Blasi's letter acknowledges that the Number has been assigned to a seven-year-old girl. (*See id.*, Ex. 9 (letter dated May 28, 2013, making the same requests).) Although some of the letters request that the SSA assign Paul a new social security number, no application is included, and the form of the request makes clear neither an application nor supporting documentation has been submitted.

The exhibits also include a letter from the SSA to Blasi date-stamped November 29, 2013, denying Paul's October 7, 2013 claim for emotional distress, physical injury, and loss of income due to the SSA's actions. (SAC, Ex. 1.)

The SAC brings three claims: for declaratory relief, for an order requiring Colvin to perform her duty, and for violation of Paul's Fourth and Fifth Amendment rights. The declaratory relief claim asks the Court to declare that the Number validly belongs to Paul, and that she may use it. (SAC, ¶ 12.) The injunctive relief claim asks the Court to order Defendants to reissue the Number to Paul, on the theory that doing so is the Commissioner's duty. The third claim argues, very tersely, that denying Paul continued use of the Number, without a hearing, violates her Fourth and Fifth Amendment rights. (SAC, ¶¶ 17, 18.) The prayer for relief requests monetary damages, declaratory relief, interest, attorneys fees, and such other relief as the Court may deem just. While it does not mention an injunction the rest of the SAC makes clear Paul is seeking that form of relief as well. While the SAC does not ask that Paul be issued a new social security number, the Court will assume she might wish to add such a claim, were she given leave to amend.

///

Although the SAC does not say in what capacity Defendants are sued, it is clear Paul is suing them in their official capacity. The SSA, as a government agency, has no individual capacity. *See White v. U.S. Postal Serv.*, 2012 WL 3730012, at *1 (S.D. Cal. Aug. 28, 2012). Colvin is sued in her capacity as Commissioner of the SSA, because Paul is asking the Court to order her to perform her official duties in a particular fashion, and she could only do so in her official capacity. *See id.* at *2. The Court therefore construes the SAC as suing Defendants in their official capacities only. *See Brandon v. Holt*, 469 U.S. 464, 469 (1985) (approving of amendment of pleadings to clarify that a defendant was sued in his official capacity only, where "[t]he course of proceedings" had made that fact plain). Although the prayer for relief includes a request for damages, as discussed below, Paul has no claim for which damages can be awarded.

**Subject Matter Jurisdiction: Claims I and II**

The Motion raises the defense of sovereign immunity as to Paul's first two claims only. Federal agencies such as the SSA may generally not be sued unless Congress has expressly revoked their sovereign immunity. *See Gerritsen v. Consulado General de Mexico*, 989 F.2d 340, 343 (9th Cir. 1993). Federal courts lack jurisdiction to award relief against a federal agency unless the relief is expressly authorized by statute. *See United States v. King*, 395 U.S. 1, 4 (1969) ("[A federal court's] jurisdiction to grant relief depends wholly upon the extent to which the United States has waived its sovereign immunity to suit and . . . such a waiver cannot be implied but must be unequivocally expressed."). And even when they are unequivocally expressed in statutory language, waivers of the federal government's sovereign immunity are strictly construed in favor of the government. *Gomez-Perez v. Potter*, 553 U.S. 474, 491 (2008).

There must be a waiver of sovereign immunity with respect to every claim brought against a federal agency or officer. *See Weber v. Dep't of Veterans Affairs*, 521 F.3d 1061, 1065 (9th Cir. 2008) ("[A] person attempting to sue a federal agency or officer must demonstrate that the claim being asserted is covered by a specific statutory authorization to sue the United States . . . .") (citation omitted); *Orff v. United States*, 358 F.3d 1137, 1142

(9th Cir. 2004) ("Any claim for which sovereign immunity has not been waived must be dismissed for lack of jurisdiction."); *Balser v. Dep't of Justice, Office of U.S. Tr.*, 327 F.3d 903, 907 (9th Cir. 2003) ("A court lacks subject matter jurisdiction over a claim against the United States if it has not consented to be sued on that claim.").

Defendants argue that the Social Security Act, specifically 42 U.S.C. § 405(g) and (h), bars Paul's claims. They argue that this narrow provision is generally the only one in federal law that provides for a review of the SSA Commissioner's decisions, and that because Paul did not comply with its requirements, Defendants are immune.

Section 405(g) provides for the review of decisions by the Commissioner, and section 405(g) specifically excludes review under any other statute or provision of law: "No findings of fact or decision of the Commissioner of Social Security shall be reviewed by any person, tribunal, or governmental agency except as . . . provided [in section 405]." The administrative process consists of an initial determination, reconsideration, a hearing before an administrative law judge, and Appeals Counsel review. *See* 20 C.F.R. 404.900. Completion of the administrative review process before filing suit in federal court is mandatory. *See Bowen v. City of New York*, 476 U.S. 467, 482 (1986); 20 C.F.R. § 404.981. Review of final decisions is the <u>only</u> remedy available; damages are unavailable, even if the Commissioner acted unconstitutionally in denying benefits. *See Schweiker v. Chilicky*, 487 U.S. 412, 424–25 (1988). A plaintiff may file suit in federal district court within sixty days after completing the review process. *See* 42 U.S.C. § 405(g).

The SSA's determination that someone other than Paul was entitled to use the Number, and warning to her not to continue using it might amount to such a finding or decision. But if so, she failed to timely appeal that decision, which was made in 2011. Similarly, if the SSA's determination that it would not issue Paul a new number until she provided proof of citizenship and age amounted to a final decision, she did not timely appeal that either.

The SSA seems to have treated its 2011 determination, that the Number belonged to someone other than Paul, as a final decision. The SSA's failure to issue Paul a new number

- 8 -                                                                                                                                                 13cv3128

does not appear to be a final decision, though, because the SSA was still waiting for her to provide documentation of her age and citizenship. Assuming that is so, there is no final decision to review. In other words, regardless of whether the SSA's refusal to allow Paul to continue using the Number, its finding that the Number belongs to someone else, or its failure to issue her a new social security number amounts to a "finding of fact or decision," Paul has not satisfied the requirements of § 405(g) and (h). If those actions or inactions don't amount to findings of fact or decisions, Paul has no final decision to appeal from; if they do, the SAC makes clear she has not complied with the mandatory review process.

Paul argues that the Court has jurisdiction under 28 U.S.C. § 1331 (the federal question jurisdiction statute); the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.*; and the Administrative Procedures Act, 5 U.S.C. §§ 1, *et seq.*

Section 1331 is merely a jurisdictional statute; it does not waive the United States' sovereign immunity for all causes of action simply because they arise under federal law. *See Gilbert v. DaGrossa*, 756 F.2d 1455, 1458 (9th Cir. 1985).  The Declaratory Judgment Act does not provide an independent basis for jurisdiction at all; it merely enlarges the range of remedies a federal court may award. *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950).

The Administrative Procedures Act permits a court to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1).  The Act only empowers a court to compel a federal agency "to perform a ministerial or non-discretionary act," or "to take action upon a matter, without directing *how* it shall act." *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 64 (2004). But the act does not supersede statutory limitations on jurisdiction. *Clark v. United States*, 462 Fed. Appx. 719, 721 (9th Cir. 2011) (citing 5 U.S.C. § 702). And even if it did, Paul in this action is not merely asking for a final determination, even if Blasi made that request in his letters. Rather, she is asking the Court to determine how Defendants <u>should</u> act, or <u>should have</u> acted. In addition, the SSA's determination of what documents Paul had to submit before it would consider issuing her a social security number is not a ministerial or non-discretionary act. *See* 42 U.S.C. § 405(c)(2)(B)(ii)

(empowering the Commissioner to require "such evidence as may be necessary to establish the age, citizenship, or alien status, and true identity of" applicants for social security numbers). *See also Milakovich v. USCIS-Orlando*, 2012 WL 1890638, at *6 (M.D. Fla. Mar. 13, 2012) (holding that the act did not authorize court to order government officials to act on immigration applications, where officials were clothed with discretion about how to carry out the determination process, and where plaintiff was in fact asking that the government be told what decision to reach).

Paul also points to a letter she received from the SSA, date-stamped November 29, 2013, telling her she could appeal its decision. (Opp'n to Mot., 7:17–25, 8:19–23.) But as the Court explained to Paul earlier, that letter was in response to her claim for tort damages against the SSA for physical, emotional, and financial harm resulting from letters it had sent her earlier. (*See* SAC, Ex. 1 (copy of letter); Docket no. 7 (Second Screening Order) at 2:17–24.) The Court has also explained why Paul has no claim under the Federal Tort Claims Act (First Screening Order, 3:9–16; Second Screening Order at 2:17–3:12), and the SAC includes no such claim. In other words, that letter did not signal the completion of the review process and trigger Paul's right to file the claims she is now bringing. Instead, it marked the end of the review process for different claims the Court has already rejected.

Finally, Paul appeals to general fairness, arguing that there is jurisdiction because her claims have merit. (Opp'n to Mot., 7:26–8:18.) Accepting this argument as valid would effectively gut sovereign immunity and all jurisdictional requirements. Sovereign immunity does sometimes result in the denial of otherwise meritorious claims, but there are good reasons for its existence, and it is a fact of law that this Court must respect.

The Court has considered other possible legal theories, but finds none that might justify its exercise of jurisdiction over Paul's first two claims. Because Paul has not met her burden of establishing jurisdiction, her first two claims are subject to dismissal. And because it is apparent her claims cannot be salvaged by amendment, they will be dismissed without leave to amend.

/ / /

**Merits**: **Claim III**

Defendants do not argue that Paul's third claim is barred by sovereign immunity, but simply that it lacks any merit and is not even colorable. They concede, citing *Califano v. Sanders*, 430 U.S. 99, 108 (1977), that colorable constitutional claims are an exception to the usual rule that only final decisions of the Commissioner are reviewable. In this claim, Paul argues she should have been granted a hearing before the SSA denied her a right to continue using the Number. (SAC, ¶¶ 17–18.) Defendants argue Paul has no property interest in the Number, and therefore can have no constitutional rights to continue using it. They also argue the SSA never denied her anything, but merely warned her not to use it because they had discovered it was assigned to someone else.

Although Paul cites both the Fourth and Fifth Amendment, only the latter has anything to do with her claim; the Fourth concerns the right to be free from unreasonable searches and seizures, and provides for issuance of search warrants. Though the Fifth Amendment contains a number of clauses, Defendants correctly point out that only the Due Process Clause has any bearing on her claim. That clause provides that no one may be "deprived of life, liberty, or property, without due process of law. . . . "

The SAC's exhibits make clear Defendants did not determine that Paul was ineligible for benefits, for a refund of withheld social security taxes, or for credit towards future benefits based on her past work. The SSA directed Blasi to ask the IRS about a refund of taxes,[2] told her that her past earnings were being held in an earnings suspense file, and offered to ensure that Paul, as soon as she applied for and received a social security number, would receive credit for those earnings. (SAC, Ex. 2.) The only right or interest that is at issue here, then, is continued use of the Number.

In response, Paul argues that it is "difficult to conceive of a more valuable and important property interest required for everyday normal life" in the U.S. than a valid social security number. (Opp'n to Mot., 8:26–9:3.) But here, Paul is merely arguing for a right to

---

[2] This part of the letter is obscured, but it refers to a "request of refund[ ] . . . of tax withholdings paid to SSA by her various employers . . . ." (SAC, Ex. 2.)

a social security number as a general matter. Even assuming there is such a right, there is only a right to have some number assigned, not a right to choose what that number will be. And even so, Paul has not alleged any facts showing she is entitled to assignment of a number. As discussed, the SAC implies she is not yet eligible, because she has not provided required proof of citizenship and age. Defendants' motion pointed this out, mentioning that she had never alleged she (or anyone else on her behalf) actually applied for a social security number, or that she met eligibility requirements to have one issued. (Mot. 4:24–5:3.) Paul did not respond to this argument, nor suggest she could make the required allegations.

Paul goes on to cite cases dealing with the loss of government benefits, and the right to a hearing before a property interest is taken away. But as discussed, Paul has not lost benefits, and has no property interest in the Number. Paul has not argued that use of the Number is a liberty interest or some other kind of interest that cannot be taken away without a hearing, but even if she had, it would lead to the same result. *See Kentucky Dept. of Corr. v. Thompson*, 490 U.S. 454, 460 (1980) (in Fourteenth Amendment due process claim, the first question is whether the plaintiff has a protected liberty or property interest).

**Merits: Discussion**

Although the Court need not reach the merits further, the Supreme Court has spoken approvingly of the practice of addressing the merits of otherwise barred claims. *See Evans v. Chavis*, 546 U.S. 189, 195 (2006) (quoting *Carey v. Saffold*, 536 U.S. 214, 225–26 (2002)). This can serve as an alternate basis for a ruling or an explanation for the benefit of an unrepresented party that denial of a claim was not due to a mere "procedural technicality." *Id.* Such analysis can also be useful in helping determine the possibility of successful amendment, and whether an appeal could be taken in good faith.

Here, the SAC's exhibits show that Paul was not born in Puerto Rico, Indiana, or anywhere else in the United States as she apparently thought until at least 2011. Instead, it seems she was born in the British Virgin Islands and was and is not a U.S. citizen. As of February, 2013 she and her attorney had no birth certificate or other proof of citizenship, nor had she begun the naturalization process. Nor does she even allege now that she has proof

of her age and citizenship, even in response to Defendants' charge. (Docket no. 18-1 at 1–2 ("Notably, in the instant action, Plaintiff . . . fails to establish or allege her age or that she is a U.S. citizen or lawful alien and can be assigned any SSN.")) Without such evidence, Defendants are precluded from issuing her a new social security number. *See* 20 C.F.R. § 422.103. While she submitted evidence that she used the Number, she never submitted any evidence, or alleged that she had any, showing it was validly issued to her. *See* 20 C.F.R. 422.107(a) ("An applicant for an original or replacement social security number card is also required to submit evidence to assist us in determining the existence and identity of any previously assigned number(s). A social security number will not be assigned, or an original or replacement card issued, unless all the evidence requirements are met.") The only assurance Paul presented was her own memory of being issued a card. She did present evidence of having used the Number, but Defendants do not dispute that, and are ready to give her credit for the work she did while using it.

The SAC also makes clear that, as far as failure to issue a new social security number goes, Defendants are not to blame for any delay in rendering a final decision.  SSA officials asked Paul in November of 2011 to submit proof of her age and citizenship and promised that a number would be issued once she did so. (*See* SAC, Ex. 1 (letter dated Nov. 14, 2011).) But, as of February 20, 2013, she had not obtained any and did not know when she might. (*Id.*, Ex. 5.) Blasi's letter of July 10, 2013 requests a final disposition of Paul's claim, which Blasi says has been pending for two years. (*Id.*, Ex. 8.) From Blasi's point of view, the SSA should have rendered a final decision within six months of Paul's requests in 2011. (*Id.*) But regardless of Paul's conclusions in the SAC and in her opposition papers, it is clear the SSA had asked her for documentation that she did not provide in 2011, and had not yet provided at least as of February, 2013.

In short, even if the Court had jurisdiction over Paul's first two claims, they would fail on the merits. This also serves as an alternative basis for dismissal of Paul's third claim.

It is also worth remembering that, assuming she meets the requirements, nothing stands in the way of Paul's obtaining a valid social security number, getting credit for her past

work, and eventually receiving benefits. The SSA has represented that as soon as she obtains and provides acceptable proof of her age and citizenship, the SSA will issue her a new number, and she will become eligible to have funds from the suspense account credited to her.

While neither party raised or discussed it in detail, it is undisputed that another person, a young girl apparently unrelated to Paul, has been assigned the Number. The Court earlier noted that this might make injunctive relief unavailable. (*See* First Screening Order, 3:24–27; Second Screening Order, 2:8–10.) Because giving Paul the right to use the Number would necessarily require that the girl be denied its use, any valid claim by Paul to an interest in use of the Number would equally implicate this girl's interests, and she would likely be a necessary party to this action. Paul's first claim probably must be dismissed for failure to name an indispensable party. *See* Fed. R. Civ. P. 19. The Court cautioned Paul about the importance of providing factual allegations. (*See* Second Screening Order, 2:8–12 ("Paul is not permitted to be vague about any of this."))

Finally, Paul has been cautioned several times in the two screening orders about the need to provide factual allegations (*see, e.g.*, First Screening Order, 1:24–2:1, 2:17, 3:19–20; Second Screening Order, 1:26–2:3, 3:25–26), and particular missing allegations have been pointed out to her. (*See, e.g.*, Second Screening Order, 2:13–15 (noting that Paul had not alleged she applied for a social security card, that the SSA refused to issue one, or if so, how, when, and why it did so).) To the extent the SAC omits the required allegations, the Court therefore concludes she cannot make them.

**Conclusion and Order**

For the reasons set forth above, Paul's first and second claims are **DISMISSED WITHOUT PREJUDICE BUT WITHOUT LEAVE TO AMEND**, for lack of jurisdiction.

Paul has been given explanations of the defects in her claims, two opportunities to amend, and an opportunity to respond to Defendants' arguments and to point out any further amendments she could make. These facts, together with documents she provided as part of the SAC, show she cannot successfully amend. Paul's third claim is **DISMISSED WITH**

**PREJUDICE**. This action is **DISMISSED WITHOUT LEAVE TO AMEND**. All pending dates are **VACATED** and all pending motions and requests are **DENIED AS MOOT**.

**IT IS SO ORDERED**.

DATED: July 16, 2015

*Larry A. Burns*

**HONORABLE LARRY ALAN BURNS**
United States District Judge